# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

June 27, 2022

Lyle W. Cayce
Clerk

No. 22-40263

WILLIAM F. UECKERT, JR.,

*Plaintiff—Appellee*,

*versus*

JUAN G. GUERRA,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 7:18-CV-302

Before SMITH, HIGGINSON, and WILLETT, *Circuit Judges*.
DON R. WILLETT, *Circuit Judge*:

There is at least one exception to the maxim "no news is good news." When a lawyer has an outstanding motion but hasn't heard from the court for a long time, prudence would advise double-checking to make sure the motion is still pending. No news may mean that the court already ruled on the motion, and the time to appeal is ticking away.

Unfortunately, that is not what Appellant Juan G. Guerra did. During a hearing the court ruled from the bench, denying Guerra's motion for summary judgment. Two days later the court issued a minute entry

memorializing its ruling. Guerra seems to have believed that this was not the court's last word, and that a written order was forthcoming. But it wasn't. The court's bench ruling was its final decision on the motion. The rules of civil procedure give would-be appellants a generous 180-day window to appeal judgments that were not set forth on a "separate document." But Guerra blew past that deadline, filing his notice of appeal 412 days after the order was entered on the docket. Because this appeal is untimely, we grant Appellee's motion to dismiss this appeal.

I

William F. Ueckert, Jr. was an engineer for the City of Pharr, Texas. He alleges that his superiors asked him to sign a document certifying that all rights-of-way for a project had been properly acquired by the city. But Ueckert believed this wasn't true and repeatedly refused to sign the document. One day his superiors called him into a meeting and "chastised" him for not signing. He again refused and was fired that same day. Ueckert sued the City and two of his superiors, Juan Guerra and Ed Wyle. He alleges that the defendants violated his First Amendment rights when they fired him for refusing to sign the document.

Guerra moved for summary judgment, arguing that the case against him should be dismissed because he was entitled to qualified immunity. The district court held a hearing on the motion on March 2, 2021. During that hearing, Judge Hinojosa denied Guerra's motion from the bench. A minute entry memorializing the district court's oral order was entered on the docket on March 4, 2021, but no written order or other document was attached.

On March 28, 2022, the district court notified the parties that jury selection would occur on June 21, 2022. Guerra filed a notice of appeal on April 20, 2022—412 days after the district court's order was entered on the docket.

## II

Ueckhart contends we lack jurisdiction because this appeal is untimely. The district court ruled on Guerra's motion for summary judgment on March 2, 2021, so Ueckhart reasons that Guerra had 30 days from that date to file a notice of appeal. Guerra responds that the district court's oral ruling was not appealable, and that he is only appealing now because the case is about to go to trial. He says he is appealing not the district court's March 2, 2021 order from the bench, but the district court's *refusal* to rule. As Guerra correctly notes, we held in *Helton v. Clements* that defendants may immediately appeal a district court's refusal to rule on a qualified-immunity defense under the collateral order doctrine.[1]

Guerra's brief makes three separate arguments. First, he asserts that the district court never ruled on his motion at all because it only ruled orally, which can never constitute an appealable "final order." Second, he argues that any appeal would have been premature because the district court's judgment did not comply with Federal Rule of Civil Procedure 58's "separate document requirement."[2] Third, he says the timeline for appeal never started because the clerk did not comply with Federal Rule of Civil Procedure 79(a).

Guerra is wrong on all counts. A bench ruling can be effective without a written order and does trigger appeal deadlines if it is final—which this ruling was. While Guerra is right that the district court's bench ruling did not comply with Rule 58's "separate document" requirement, that neither prevented him from appealing nor gave him infinite time to appeal. Finally, Guerra is wrong that the clerk failed to comply with Rule 79(a).

---

[1] 787 F.2d 1016, 1017 (5th Cir. 1986); *see also Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012).

[2] Fed. R. Civ. P. 58(a).

A

We start with Guerra's apparent belief that only written orders, and not bench orders, have legal significance. While courts today generally rule through written orders and judgments, they may choose to rule from the bench.[3] In England, ruling from the bench "ex tempore," or right after oral arguments, was the primary way courts conducted business.[4] That remains common practice in England to this day.[5] We inherited our system from England, and in the colonies, courts likewise delivered their opinions orally.[6] Starting in the 17th century, some states required judges to write down at least the more important opinions.[7] Written opinions have become the norm even in courts where they are not required,[8] but federal courts at least have

---

[3] *See, e.g.*, *Meza v. Livingston*, 537 F.3d 364, 367 (5th Cir. 2008) (citing *Workman v. Jordan*, 958 F.2d 332, 336 n.5 (10th Cir. 1992)); *State v. Zahn*, 562 N.W.2d 737, 740 (N.D. 1997) ("A court order can be oral.").

[4] *See* Ruggero J. Aldisert, *The English Appellate Process: A Distant Second to Our Own? Appellate Justice in England and the United States: A Comparative Analysis*, 75 JUDICATURE 48, 49 (1991).

[5] *See id.*

[6] *See* Erwin C. Surrency, *Law Reports in the United States*, 25 AM. J. LEGAL HIST. 48, 55–56 (1981).

[7] *See id.* at 55–56.

[8] *See, e.g.*, UNITED STATES COURT OF APPEALS FOR THE EIGHTH CIRCUIT, INTERNAL OPERATING PROCEDURES 22 (June 3, 2019), https://ecf.ca8.uscourts.gov/newrules/coa/iops06-19update.pdf ("The court rarely rules from the bench.").

not lost their power to rule from the bench.[9] That is what the district court did here.[10]

Nor is it impossible to appeal from a bench ruling. Our court has allowed interlocutory appeals from oral rulings,[11] and so have other circuits.[12] Two of those cases dealt with almost the exact issue here: an appeal from an oral ruling denying a qualified-immunity defense.[13] The form of the ruling is

---

[9] *See, e.g.*, *Meza*, 537 F.3d at 367; *Workman*, 958 F.2d at 336 n.5; *Orgain v. City of Salisbury*, 521 F. Supp. 2d 465, 485 (D. Md. 2007), *aff'd in part*, 305 F. App'x 90 (4th Cir. 2008) ("Courts routinely rule from the bench at the conclusion of hearings."); *Living Res. v. Or. Arena Corp.*, 982 F. Supp. 698, 783–84 (D. Or. 1997) (notifying the parties that the court would later rule from the bench).

[10] For this reason, *Helton* is inapplicable. *Helton* dealt with a district court's refusal to rule on a qualified immunity defense. 787 F.2d at 1017. Not only has the district court not refused to rule on Guerra's defense of qualified immunity, in fact it did so.

[11] *In re United States Bureau of Prisons*, 918 F.3d 431, 438 (5th Cir. 2019); *United States v. Sid-Mars Rest. & Lounge, Inc.*, 644 F.3d 270, 271–80 (5th Cir. 2011); *United States v. Gurney*, 558 F.2d 1202, 1207 (5th Cir. 1977), *abrogated on other grounds by Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589 (1978); *see also Sid-Mars Rest. & Lounge, Inc.*, 644 F.3d at 283 (Dennis, J., dissenting) (reciting the procedural history of the case, noting that the appeal was of an "oral order without any additional findings of fact or conclusions of law"). *Cf. Broad. Music, Inc. v. M.T.S. Enters., Inc.*, 811 F.2d 278, 279 (5th Cir. 1987) (voluntary, oral dismissal of claims was sufficiently final "even though there [was] no formal dismissal or stipulation filed with the clerk" (quoting *Oswalt v. Scripto, Inc.*, 616 F.2d 191, 194 (5th Cir. 1980))); *Oswalt*, 616 F.2d at 194 (same).

[12] *Spain v. Gallegos*, 26 F.3d 439, 445 n.9 (3d Cir. 1994) (oral dismissal of claims was final for purposes of § 1291); *Kaluczky v. City of White Plains*, 57 F.3d 202, 206 (2d Cir. 1995); *Cent. Milk Producers Coop. v. Sentry Food Stores, Inc.*, 573 F.2d 988, 990 (8th Cir. 1978); *United States v. Bender*, 221 F.3d 265, 267 (1st Cir. 2000) (considering interlocutory appeal of oral order granting a motion to suppress testimony); *see also Bender v. United States*, No. CIV.04-13-P-H, 2004 WL 2011449, at *2 n.3 (D. Me. Sept. 9, 2004) (discussing the procedural history of the First Circuit's opinion in *United States v. Bender*).

[13] *Workman*, 958 F.2d at 336 n.5 ("Although the oral ruling may have lacked procedural formality for purposes of appeal, we allow the appeal from this ruling because there is no question as to its finality . . . ."); *Kaluczky*, 57 F.3d at 206; *see also Meza*, 537 F.3d at 367 (citing *Workman* favorably).

immaterial.[14] What matters for § 1291 purposes is whether the court's ruling was a "final judgment."[15]

The test for finality is whether the district court intended that its order be "effective immediately."[16] Said another way, a court's ruling is only "final" if the judge "intends to have nothing further to do"—with the motion (if an interlocutory appeal) or the case (if a conventional appeal).[17] To understand whether an order is final, we look chiefly to the language the district court used. For example, we noted in *Logue* that a district court's memorandum saying that "'[a] preliminary injunction *will be* issued' . . . did not reflect the district court's intent that the opinion act as an operable judgment."[18] In contrast, a minute entry saying "Prel. Injunction *is now permanent* under rule 65 of FRCP" was immediately appealable because it "reflect[ed] the District Court's intent that the order act as an operable judgment."[19]

---

[14] Indeed, allowing district court to shield its decisions from appellate review by refusing to reduce orders to writing could create perverse incentives. *See In re United States Bureau of Prisons*, 918 F.3d at 437 ("[A] lack of procedural formality does not shield a district court's final decisions from appellate review under 28 U.S.C. § 1291.").

[15] *See* 28 U.S.C. § 1291.

[16] *In re United States Bureau of Prisons*, 918 F.3d at 437; *see also La. World Exposition, Inc. v. Logue*, 746 F.2d 1033, 1039 (5th Cir. 1984) (an order is final if the district court intend that it "act as an operable judgment").

[17] *State Nat. Bank of El Paso v. United States*, 488 F.2d 890, 893 (5th Cir. 1974).

[18] *Logue*, 746 F.2d at 1039 (emphasis in original) (quoting *Beukema's Pet. Co. v. Admiral Pet. Co.*, 613 F.2d 626, 628 (6th Cir. 1979)).

[19] *Id.*; *see also State Nat. Bank of El Paso*, 488 F.2d at 893 (noting that a decision is "final" if "the district judge *regards* it as final"); 15B Edward H. Cooper, Fed. Prac. & Proc. Juris. (Wright & Miller) § 3915 (2d ed.) ("The important question is whether the district court in fact has concluded all the proceedings it intends to take.").

While we will discuss Rule 58 in more detail below, it is worth noting at the outset that whether a court enters its "judgment" on a separate document is analytically distinct from whether that judgment is final under § 1291. A Rule 58 judgment is neither necessary

Here, the district court regarded its oral ruling as final. The parties both characterize the court's oral statement as having ruled on Guerra's motion from the bench, not merely a prediction about how the court would rule sometime in the future. The minute entry memorializing the court's oral ruling used similarly definite language: It "denied . . . Defendant Juan G. Guerra['s] Motion for Summary Judgment as stated on the record." And the fact that the court never issued a written memorandum or opinion erased any doubt that it intended its first word to be its last.

Guerra believes that our decision in *Jones v. Celotex Corp.* says that neither a court's bench ruling nor a minute entry on the docket is an appealable order.[20] But Guerra's reading of *Jones* is only partially right. He is right that we said minute entries are not orders and cannot be appealed. "Even prior to the added requirement of Rule 58, [a] minute entry alone could not stand as a final judgment of the district court. 'Courts render judgment; clerks only enter them on court records.'"[21] But we did not reach the question of whether bench rulings can be final for purposes of § 1291.[22]

---

nor sufficient for a judgment to be final, though it is evidence of finality. *See Bankers Tr. Co. v. Mallis*, 435 U.S. 381, 387 (1978) (per curiam) ("Even if a separate judgment is filed, the courts of appeals must still determine whether the district court intended the judgment to represent the final decision in the case."); *see also Sullivan v. Finkelstein*, 496 U.S. 617, 628 n.7 (1990) ("It is true, as respondent maintains, that the District Court did not caption its order as a 'judgment,' much less a 'final judgment.' The label used by the District Court of course cannot control the order's appealability in this case, any more than it could when a district court labeled a nonappealable interlocutory order as a 'final judgment.'"); *Shalala v. Schaefer*, 509 U.S. 292, 303 (1993) (noting that "a formal 'separate document' of judgment is not needed for an order of a district court to become appealable"); *Eberhardt v. O'Malley*, 17 F.3d 1023, 1024 (7th Cir. 1994) ("A Rule 58 judgment order is evidence of finality and hence of appealability under 28 U.S.C. § 1291, rather than a sine qua non of finality.").

[20] 857 F.2d 273, 274 (5th Cir. 1988) (per curiam).

[21] *Id.* at 275.

[22] *See id.* Had we reached the issue, we likely would have held that the bench ruling was not final. The district court judge in *Jones* made it clear that he was not finished with the case, advising "that he would provide his written opinion later." *Id.* at 274. In contrast,

No. 22-40263

And in the decades since it was decided, no decision has read *Jones* the way Guerra does. To the contrary, we have repeatedly affirmed that bench ruling can be final provided the district court intends that it be effective immediately.[23] Here, the district court treated its bench ruling as final, so it is final.

B

Guerra's next argument is that even if the district court's ruling were final, any appeal would have been dismissed as premature because the ruling did not comply with Rule 58. He is right that the district court's oral ruling did not comply with Rule 58's requirement that every "judgment" be set out in a separate order.[24] While most people think of a judgment as the order that marks the effective conclusion of a case, Rule 54 defines "judgment" as "any order from which an appeal lies."[25] As a result, Rule 58 also applies to interlocutory orders appealable under the collateral order doctrine.[26]

But Guerra is wrong that noncompliance would have barred his appeal. Federal Rule of Appellate Procedure 4 states that "[a] failure to set forth a judgment or order on a separate document when required by Federal Rule of Civil Procedure 58(a) does not affect the validity of an appeal from

---

here the district court never told the parties that a written opinion or order was forthcoming.

[23] *See In re United States Bureau of Prisons*, 918 F.3d 438; *Sid-Mars Rest. & Lounge, Inc.*, 644 F.3d at 271–80; *Gurney*, 558 F.2d at 1207.

[24] Fed. R. Civ. P. 58.

[25] *Id.* 54(a).

[26] *See Silver Star Enters.*, 19 F.3d at 1012 ("We need not decide whether those rulings were final orders or appealable interlocutory orders because the separate document requirement of Rule 58 applies equally to both kinds of decisions."); *Theriot v. ASW Well Serv., Inc.*, 951 F.2d 84, 88 (5th Cir. 1992) ("Irrespective of whether the decision of the district court . . . is otherwise appealable as a final order or as an interlocutory order . . . it still must comply with Rules 58 and 79(a) before an appeal can be taken.").

that judgment or order."[27] This change codified and extended the Supreme Court's earlier holding in *Mallis*, which held that parties could waive the separate document requirement.[28] While *Mallis* partially sandpapered Rule 58's sharp edges, the rule could still make it harder for appellants to appeal—rather than easier, as the rule was created to do. Some courts read *Mallis* to mean that both parties had to agree to waiver, while others held that the right to have the judgment set forth in a separate document belonged to the appellant alone.[29] If an appellee could refuse to waive the separate document requirement, they could force appellants to return to the trial court and observe the formality of asking the district court to set forth the judgment on a separate document.[30] But the 2002 amendments to Rule 4 fixed that problem. "The amendments [to Rule 4] clarify that the decision to waive the entry of a separate document is for the appellant alone so that an appellee

---

[27] Fᴇᴅ. R. Aᴘᴘ. P. 4(a)(7)(B).

[28] 435 U.S. at 387; *see also* Fᴇᴅ. R. Aᴘᴘ. P. 4, advisory committee's note to 2002 amendments ("New Rule 4(a)(7)(B) is intended both to codify the Supreme Court's holding in *Mallis* and to make clear that the decision whether to waive the requirement that the judgment or order be set forth on a separate document is the appellant's alone.").

[29] *Compare Caperton v. Beatrice Pocahontas Coal Co.*, 585 F.2d 683, 691 (4th Cir. 1978) (noting that one requirement for Mallis to apply was that "the appellees 'did not object to the taking of the appeal in the absence of a separate judgment'" (quoting *Mallis*, 435 U.S. at 387–88)) *and Theriot*, 951 F.2d at 88 (appellee defeated appellate jurisdiction by objecting to noncompliance with Rule 58) *with Leonhard v. United States*, 633 F.2d 599, 612 (2d Cir. 1980) (permitting appeal from order not complying with Rule 58 even though the appellees objected) *and Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., Loc. 249 v. W. Pa. Motor Carriers Ass'n*, 660 F.2d 76, 80 (3d Cir. 1981) (same). Our own opinions were equivocal. *Compare Matter of Seiscom Delta, Inc.*, 857 F.2d 279, 282–83 (5th Cir. 1988) (for *Mallis* to apply, "the party that would have benefited from a strict application of [R]ule 58—presumably, in most cases, the appellant—must be shown to have" waived Rule 58) *with id.* at 284 ("this decision does not change the law when the *appellee* does object to the failure to enter the judgment as a separate document" (emphasis added) (quoting *Hanson v. Town of Flower Mound*, 679 F.2d 497, 502 (5th Cir. 1982))). More than a decade later, we held that an appellee *could* defeat appellate jurisdiction by objecting even though Rule 58 was created for the appellant's benefit. *Theriot*, 951 F.2d at 88.

[30] *See, e.g.*, *Silver Star Enters., Inc.*, 19 F.3d at 1013.

cannot object and require the appellant to go back to district court to get a final judgment entered."[31] What this means for Guerra is simple: The lack of a separate document did not prevent him from appealing immediately.

True, Guerra did not *have* to waive the separate document requirement. Appellants can choose to wait until the judgment is entered on a separate document before noticing their appeal. But they can only wait for 180 days[32]—not eternity.[33] Rule 4 says that even if the judgment is not entered on a separate document, judgment is deemed entered 150 days after the "entry of the judgment or order in the civil docket."[34] Parties then have another 30 days to file a notice of appeal.[35] The rules also let parties file a notice of appeal before the judgment is entered.[36] In sum, then, parties have a 180-day window to file a notice of appeal if the district court neglected to enter the judgment in a separate document.[37] That 180-day window may be extended even further on motion to the district court.[38]

Guerra's notice of appeal was filed well outside of even this generous 180-day window. And we cannot forgive this lapse because timeliness is

---

[31] *Peng v. Mei Chin Penghu*, 335 F.3d 970, 975 n.4 (9th Cir. 2003).

[32] *See Burnley v. City of San Antonio*, 470 F.3d 189, 196 (5th Cir. 2006).

[33] Before Rule 4(a) was amended in 2002 to introduce the 150-day cap, the time to file an appeal *was* infinite if the district court failed to enter judgment on a separate document. *See, e.g.*, *Abdulwali v. Wash. Metro. Area Transit Auth.*, 315 F.3d 302, 303–04 & n.1 (D.C. Cir. 2003).

[34] Fed. R. App. P. 4(a)(7)(A)(ii).

[35] *Id.* 4(a)(1)(A).

[36] *Id.* 4(b)(2).

[37] *See Burnley*, 470 F.3d at 196 (where district court failed to comply with Rule 58 but the clerk entered judgment on the docket per Rule 79(a), the appellant had 180 days to file a notice of appeal).

[38] *See* Fed. R. App. P. 4(a)(5).

jurisdictional.[39] This makes good sense. Rule 4's committee notes make clear that the separate document requirement was not meant to give would-be appellants infinite amounts of time to file their notice of appeal. While it is not uncommon for a month or two to pass without hearing from the court, "150 days of inactivity . . . clearly signals to litigants that the court is done."[40] While Guerra might have been excused for believing that a written order was forthcoming for a time, as month after month stretched on the law required that he find out whether the court still had his motion under advisement.[41] He could have done this informally through a letter or phone call to the court, or through a formal Rule 58(d) motion.[42] But he did not, and his notice of appeal was untimely.

## C

Guerra raises one last argument. He notes that Rule 4(a) says it is not enough for the judgment to be set forth on a separate document or for 150 days to have passed. A judgment will also not be deemed entered unless "the judgment or order is entered in the civil docket under Federal Rule of Civil Procedure 79(a)."[43] Guerra argues that an oral ruling cannot satisfy Rule

---

[39] *Browder v. Dir., Dep't of Corr. of Illinois*, 434 U.S. 257, 264 (1978) (noting that the "30-day time limit is 'mandatory and jurisdictional'" (quoting *United States v. Robinson*, 361 U.S. 220, 229 (1960))); *Matter of Eichelberger*, 943 F.2d 536, 540 (5th Cir. 1991) (same).

[40] Fed. R. App. P. 4, advisory committee's note to 2002 amendments.

[41] *See* 16A Catherine T. Struve, Fed. Prac. & Proc. Juris. (Wright & Miller) § 3950.2 (5th ed.) ("The Rules' 150-day cap makes eminent good sense. . . . When a judge neglects to enter a judgment on a separate document, the parties may be confused about the judge's intentions. However, if the judge does nothing further in the case for 150 days, then it ordinarily should occur to even the most inattentive of appellate counsel that it is time either to seek clarification from the judge or to file an appeal.").

[42] *See* Fed. R. Civ. P. 58(d) ("A party may request that judgment be set out in a separate document as required by Rule 58(a).").

[43] Fed. R. App. P. 4(a)(7)(A)(ii).

79(a) because there was no "copy" of the court's order, and that as a result Rule 4(a)'s 30-day window to appeal was never triggered.

But Rule 79(a) does not require the clerk to keep a copy of the order. The copy requirement Guerra refers to appears in Rule 79*(b)*.[44] This is important because Rule 4(a) only requires compliance with Rule 79(a) to start the clock on a litigant's time to appeal—not 79(b). So even if Guerra is right that bench rulings put clerks in a bind because they cannot save a "copy" of the order, that conundrum is one we can save for another day because it is immaterial to whether Guerra's time to appeal under Rule 4(a) expired.

## III

While the amendments to Rules 54 and 58 have fixed many problems that existed for conventional appeals, they continue to cause mischief for interlocutory appeals. It is anomalous that parties will generally have 180 days to file an interlocutory appeal.[45] What is worse, this seems to have been an accident because Rule 58 was not intended to apply to interlocutory appeals at all. Rule 58 was enacted to resolve the question of when a "judgment," meaning an order that marked the end of the case (excepting minor housekeeping items like attorney's fees) became effective.[46] But Rule 54 now defines judgment much more expansively to include "any order from which

---

[44] *See* FED. R. CIV. P. 79(b) ("The clerk must keep a copy of every final judgment and appealable order . . . .").

[45] Parties may have even longer if they file a motion for an extension of time. *See* FED. R. APP. P. 4(a)(5).

[46] *See Ludgood v. Apex Marine Corp. Ship Mgmt.*, 311 F.3d 364, 368 (5th Cir. 2002) (giving the conventional definition of a "final judgment" as one that "conclusively determines the rights of the parties to the litigation and leaves nothing for the court to do but execute the order or resolve collateral issues" (citations omitted)); *see also Escamilla v. Santos*, 591 F.2d 1086, 1088 (5th Cir. 1979) (same).

an appeal lies," which had the side-effect of causing Rule 58 to apply to interlocutory appeals.[47]

The advisory committee to the rules of civil procedure is aware of this strange result. It recommended that courts simply "disregard" the plain meaning of the rules as applied to interlocutory orders:

> In theory . . . the separate document requirement continues to apply to an interlocutory order that is appealable as a final decision under collateral-order doctrine. Appealability under collateral-order doctrine should not be complicated by failure to enter the order as a judgment on a separate document— there is little reason to force trial judges to speculate about the potential appealability of every order. . . . Drastic surgery on Rules 54(a) and 58 would be required to address this and related issues, however, and it is better to leave this conundrum to the pragmatic disregard that seems its present fate."[48]

But for better or worse, courts have not met this conundrum with "pragmatic disregard." We have instead applied the separate order requirement to interlocutory appeals because that is what the plain meaning of the rules requires.[49] But that is unsatisfactory. Appellants now have an enormous 180-day window to file interlocutory appeals unless the district court engages in time-wasting paper-pushing, entering separate "judgments" containing their holdings on every interlocutory motion that might be susceptible to appeal. It is unlikely that the pragmatic drafters of the rules of procedure intended this unpragmatic result.

---

[47] Fed. R. Civ. P. 54(a).

[48] *Id.* 58, advisory committee's note to 2002 amendment; *see also* 11 Mary Kay Kane, Wright & Miller, Fed. Prac. & Proc. Civ. (Wright & Miller) § 2782 & n.14 (3d ed.) (noting that "Rule 58 [was] designed . . . [for a] specific and limited purpose," and it makes little sense to apply it to interlocutory appeals).

[49] *See United States v. Indrelunas*, 411 U.S. 216, 222 (1973) (the separate document requirement is "a 'mechanical change' that must be mechanically applied in order to avoid new uncertainties").

No. 22-40263

This practical problem is not the only issue caused by the strange interplay between Rules 4(a), 54(a), 58, and 79. Rule 54(a)'s definition of "judgment" as "any order from which an appeal lies" also renders parts of Rules 4 and 79 surplusage. Rule 4 gives parties 30 days to appeal after entry of the "judgment *or order* appealed from."[50] The language "or order" was almost certainly intended to refer to appealable interlocutory orders. But again, Rule 54(a) says that all appealable orders are "judgment[s]." As a result, the language "or order" could be stricken from Rule 4 without changing its legal effect. The same problem surfaces in Rule 79(b), which commands the clerk to "keep a copy of every final judgment and appealable order."[51] Again, because Rule 54(a) says all appealable orders are "judgments," the language "and appealable order" is unnecessary. Perhaps "[d]rastic surgery" on one or more of these rules is exactly what is required.[52]

IV

The motion to dismiss the appeal for lack of jurisdiction is GRANTED.

---

[50] FED. R. APP. P. 4(a)(1)(A). In fact, the unnecessary language "or order" is found *22 times* in Rule 4. *See also id.* 4(a)(1)(B), 4(a)(1)(B)(iv), 4(a)(2) (used twice), 4(a)(4)(B)(i), 4(a)(6)(A), 4(a)(6)(B), 4(a)(7)(A), 4(a)(7)(A)(i), 4(a)(7)(A)(ii) (used three times), 4(a)(7)(B) (used twice), 4(b)(1)(A)(i), 4(b)(1)(B)(i), 4(b)(2) (used twice), 4(b)(3)(B), 4(b)(6), 4(c)(3).

[51] FED. R. CIV. P. 79(b).

[52] *Id.* 58, advisory committee's note to 2002 amendment; *see also* Bradley Scott Shannon, *Action Is an Action Is an Action Is an Action*, 77 WASH. L. REV. 65, 161–64 (2002) (noting the problems caused by the interplay of Rules 54(a) and 58 and suggesting that Rule 58 be limited to "final orders," not "judgments," thereby freeing interlocutory orders from the separate document requirement).